# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE

| | |
|---|---|
| Linn Guerrero, individually and as Next Friend of L.S.J. ("S"), a minor,<br>　　　　　　　　Plaintiff(s),<br><br>vs.<br><br>Knoxville Police Department, Police Chief Paul Noel, City of Knoxville, Tennessee, Officer Michael Geddings, Officer Terry Crowe, Officer Luke Johnson, Officer Jonathan Chadwell, Former Police Chief Eve Thomas, Officer Amanda Bunch, Officer Rachel Britt, Jeffrey Price, Manier & Herod, P.C., and Ray Meade<br>　　　　　　　　Defendants. | No.:<br><br>JURY DEMAND |

## COMPLAINT

Come Plaintiffs and state:

## I. INTRODUCTION

1. This is an action for constitutional violations and personal injury. This action arises under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; under federal law, specifically, 42 U.S.C. §§ 1983 and 1988; under the Tennessee governmental tort liability statutes; under Tenn. Code Ann. § 29-20-101 *et seq.,* and under common law for trespass, stalking, assault, battery, invasion of privacy, harassment, and impersonating law enforcement.

2. Plaintiff sues for compensatory damages under 42 U.S.C. § 1983 because Defendants jointly and severally deprived Plaintiffs of their federally-protected right to be free from unreasonable search.

3. Plaintiff Linn Guerrero is S's mother, and she sues individually and on behalf of S under Tenn. Code Ann. § 20-1-105 and through 42 U.S.C. § 1983 and § 1988.

4. Action is brought against Defendants Knoxville Police Department and City of Knoxville, Tennessee for their failure to properly train and supervise their agents and their establishment of policies, procedures, practices, and customs regarding unreasonable searches of residences. Because of the policies, practices, customs, and procedures of the Knoxville Police Department, Plaintiffs were intentionally deprived of their constitutional right to be free from unreasonable search guaranteed to them by the United States Constitution.

5. Defendants Geddings, Crowe, and Johnson, are/were police officers acting in the course and scope of their employment with the Knoxville Police Department, and acting under color of state law, forced their way into Plaintiffs' home and conducted an illegal and unreasonable search of Plaintiff's home where no reasonable police officer would have so acted.

6. Defendants Geddings, Crowe, Johnson, Chadwell, Britt, and Bunch are not entitled to qualified or other immunity.

7. Defendants Geddings, Crowe, Johnson, Chadwell, Britt, and Bunch were acting under color of state law.

8. Defendants Geddings, Crowe, Johnson, Chadwell, Britt, and Bunch are sued in their individual and official capacities.

9. Defendants Geddings, Crowe, Johnson, Chadwell, Britt, and Bunch acted while performing their official duties, and, therefore, under color of state law. In the alternative, although acting in the performance of their official duties, Defendants Geddings, Crowe, Johnson, Chadwell, Britt, and Bunch acted intentionally and/or outside the scope of their official authority.

## II. JURISDICTION AND VENUE

10. This action is brought under 42 U.S.C. §§ 1983 and 1988 and the United States Constitution. This court has jurisdiction over Plaintiffs' claim under 28 U.S.C. § 1331 (federal question) and under 28 U.S.C. § 1343(3) (civil rights). This court has jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction) as those claims form part of the same case or controversy under Article III of the United States Constitution.

11. Venue lies in the Eastern District of Tennessee, the district in which the claim arose, under 28 U.S.C. § 1391(b)(2).

## III. PARTIES

12. Plaintiff Linn Guerrero resides at 500 Prescott Way, Knoxville, Tennessee.

13. Plaintiff Linn Guerrero is S's mother and sues on his behalf as Next Friend. S resides at 500 Prescott Way, Knoxville, Tennessee.

14. Defendant City of Knoxville, Tennessee is a political subdivision of Tennessee, operating under the Constitution and the laws of Tennessee within the U.S. Eastern District of Tennessee.

2

City of Knoxville, Tennessee may be served with process through Indya Kincannon, City Mayor, 400 Main Street, Room 691, Knoxville, TN 37902.

15. The Knoxville Police Department is a department or division of Knox County with its principal place of business at 800 Howard Baker Jr. Avenue, Knoxville, Tennessee 37915, and is the employer of the Defendants Geddings, Crowe, Johnson, and Chadwell. Knoxville Police Department may be served with process through Paul Noel, Police Chief, at its principal place of business.

16. Defendant Paul Noel is currently the Police Chief of the Knoxville Police Department. Defendant Noel may be served with process at the Knoxville Police Department, 800 Howard Baker Jr. Avenue, Knoxville, Tennessee 37915.

17. Defendant Eve Thomas was the Police Chief of the Knoxville Police Department at all times material to this Complaint. Defendant Thomas may be served with process at the Knoxville Police Department, 800 Howard Baker Jr. Avenue, Knoxville, Tennessee 37915.

18. Defendant Terry Crowe (ID # 2186) is/was an officer for the Knoxville Police Department. The acts and omissions complained of herein arise from the conduct of Defendant Crowe while he was acting under color of state law, and each act and/or omissions was committed under Defendant Crowe's employment and authority as an officer of the Knoxville Police Department. Defendant Crowe is sued in his individual capacity.

19. Defendant Luke Johnson (ID # 2222) is/was an officer for the Knoxville Police Department. The acts and omissions complained of herein arise from the conduct of Defendant Johnson while he was acting under color of state law, and each act and/or omissions was committed under Defendant Johnson's employment and authority as an officer of the Knoxville Police Department. Defendant Johnson is sued in his individual capacity.

20. Defendant Jonathan Chadwell is/was an officer for the Knoxville Police Department. The acts and omissions complained of herein arise from the conduct of Defendant Chadwell while he was acting under color of state law, and each act and/or omissions was committed under Defendant Chadwell's employment and authority as an officer of the Knoxville Police Department. Defendant Chadwell is sued in his individual capacity.

3

21. Defendant Michael Geddings (ID # 1814), upon information and belief, is a Sergeant and employed by Knoxville Police Department. The acts and omissions complained of herein arise from the conduct of Defendant Geddings while he was acting under color of state law, and each act and/or omissions was committed under Defendant Geddings' employment and authority as an officer of the Knoxville Police Department. Defendant Geddings is sued in his individual capacity.

22. Defendant Amanda Bunch, upon information and belief, is a Sergeant and employed by Knoxville Police Department. The acts and omissions complained of herein arise from the conduct of Defendant Bunch while she was acting under color of state law, and each act and/or omissions was committed under Defendant Bunch's employment and authority as an officer of the Knoxville Police Department. Defendant Bunch is sued in her individual capacity.

23. Defendant Rachel Britt, upon information and belief, is a Sergeant and employed by Knoxville Police Department. The acts and omissions complained of herein arise from the conduct of Defendant Britt while she was acting under color of state law, and each act and/or omissions was committed under Defendant Britt's employment and authority as an officer of the Knoxville Police Department. Defendant Britt is sued in her individual capacity.

24. Defendant Ray Meade, on information and belief, is a process server in the Knoxville, Tennessee metropolitan area and has no official affiliation with the Knoxville Police Department, or any other police department in the East Tennessee area. Defendant Meade may be served with process at his residence at 629 Green Meadows Lane, Lenoir City, Tennessee 37771.

25. Jeffrey Price, on information and belief, is a resident of Davidson County, Tennessee. Defendant Price may be served with process at 1201 Demonbreun Street, Nashville, Tennessee 37203.

26. Defendant Manier & Herod, P.C. is a law firm with a principal place of business in Davidson County, Tennessee at 1201 Demonbreun Street, Nashville, Tennessee 37203. Manier & Herod, P.C. may be served via its Registered Agent, Jeffrey Price, at 1201 Demonbreun Street, Nashville, Tennessee 37203.

4

## IV. RESPONDEAT SUPERIOR AGAINST DEFENDANT CITY OF KNOXVILLE, TENNESSEE

27. Defendants Geddings, Crowe, Johnson, Chadwell, Bunch, and Britt were employees and agents of the City of Knoxville, Tennessee acting within the scope of employment. Defendant City of Knoxville, Tennessee is liable for the acts and/or omissions of its agents under *respondeat superior*.

28. Plaintiff demands compensatory damages, jointly and severally from Defendant City of Knoxville, Tennessee plus the costs of this action and whatever additional relief this Court deems just.

## V. RESPONDEAT SUPERIOR AGAINST DEFENDANTS JEFFREY PRICE AND MANIER & HEROD, P.C.

29. Whenever the term "Defendant Meade" is utilized within this suit, such term collectively refers to and includes Defendant Ray Meade, Defendant Jeffrey Price, and Defendant Manier & Herod, P.C. Sometimes when it is alleged Meade did any act or thing or did no act or thing, it is meant Price and/or Manier & Herod, P.C., respectively, performed, participated in, or failed to perform such acts or things while in the course and scope of their employment or agency relationship with Defendant Ray Meade.

30. Defendant Ray Meade was employed and an agent of Defendants Jeffrey Price and Manier & Herod P.C. and acting within the scope of employment at all times material to the facts and claims in this suit. Defendants Jeffrey Price and Manier & Herod P.C. is liable for the acts and/or omissions of its agents under *respondeat superior*.

31. Plaintiff demands compensatory damages, jointly and severally from Defendants Jeffrey Price and Manier & Herod P.C. plus the costs of this action and whatever additional relief this Court deems just.

## VI. FACTS

32. On November 17, 2021 at approximately 8:30 p.m., three officers from the Knoxville Police Department ("KPD"), Defendants Geddings, Crowe, and Johnson arrived at Plaintiffs' home located at 500 Prescott Way, Knoxville, TN 37919.

33. Plaintiff Guerrero ("Guerrero") and S were home alone.

34. Guerrero did not call the police, so she was not going to answer the door.

5

35. The Defendant officer at the door then repeatedly beat on Guerrero's front door, rang the doorbell several times, and began to yell.

36. S, only two years old at the time, became frightened and began to cry.

37. Guerrero became frightened and flustered with the Defendants' repeated banging on the front door and yelling. Guerrero then answered the door via Ring doorbell.

38. The Defendant officers at the door informed Guerrero they had a warrant, and asked if "Loring Justice" was there. Guerrero informed Loring Justice was not there.[1]

39. The Defendant officers at the door informed Guerrero she needed to come to the door and open it to speak with them.

40. Even after Guerrero answered the door via Ring doorbell, the Defendant officers at the door continued to beat on the front door and yell.

41. Ultimately, Guerrero opened the door holding S and requested to see the alleged warrant Defendants Geddings, Crowe, and Johnson informed they had.

42. Guerrero assumed it was a mistake or product of confusion.

43. Defendants Geddings, Crowe, and Johnson refused to show Guerrero any documentation, or otherwise, of any warrant whatsoever.

44. Defendants Geddings, Crowe, and Johnson then forced themselves into Guerrero's home without permission.

45. The first Defendant officer to force himself into Guerrero's home pushed Guerrero and S out of the way of the doorway with his shoulder.

46. The first Defendant officer to force himself into Guerrero's home intentionally pushed Guerrero and S out of the way of the doorway.

47. As Defendants Geddings, Crowe, and Johnson forced their way into Guerrero's home without permission, Guerrero noticed a fourth man present in plain clothes.

48. The fourth man present in plain clothes was Defendant Ray Meade. Guerrero did not know this until days later.

49. Defendant Meade was wearing what appeared to be a law enforcement badge around his neck.

---

[1] Loring Justice is Guerrero's husband.

6

50. Defendant Meade also forced his way into Guerrero's home.

51. Once inside Guerrero's home, without permission, the Defendants Geddings, Crowe, and Johnson searched the residence and asked again for Loring Justice, who was not there.

52. Guerrero had already informed Loring Justice was not there before Defendants Geddings, Crowe, and Johnson and Defendant Meade forced their way into Guerrero's home.

53. Defendants Geddings, Crowe, and Johnson appeared to know Defendant Meade.

54. Defendants Geddings, Crowe, and Johnson appeared to be answering to Defendant Meade as if he were their superior.

55. Defendant Meade repeatedly asked Guerrero personal questions while inside her home.

56. Defendant Meade specifically asked if Loring Justice was at a certain establishment, which suggested Defendant Meade and/or the Knoxville Police Department had been following Guerrero's family.

57. Defendant Meade then disclaimed affiliation with the Knoxville Police Department or the police and informed Guerrero he had "federal papers" to serve.

58. Guerrero then told Defendant Meade to get out of her home and Defendant Meade refused.

59. Having already informed Defendants Geddings, Crowe, and Johnson and Defendant Meade she lived at the home, she cited Fed. R. Civ. P. 4 and told Defendant Meade if he had anything to serve that he could serve her under the rule.

60. Defendant Meade refused to do so and then threatened action by the "U.S. Attorney" against Guerrero and/or Loring Justice.

61. Neither Guerrero nor Justice have ever committed a federal crime or have ever been accused of such.

62. Defendant Meade had no authority for the U.S. Attorney.

63. Defendant Meade, impersonating a law enforcement officer to gain access to Guerrero's home and to question her inside her home and in conspiracy with the Knoxville Police Department and/or Defendants Geddings, Crowe, and Johnson who forced themselves into Guerrero's home at Defendant Meade's behest, had no authority for the U.S. Attorney.

7

64. Defendant Meade lied to Guerrero about action by the "U.S. Attorney" to intimidate her inside her home in front of at least one of the other Defendants in her home.

65. After searching the upstairs of Guerrero's home, the Defendants Geddings or Crowe or Johnson came downstairs and informed Defendant Meade that no one else was in the home.

66. Defendants Geddings, Crowe, and Johnson appeared as though they were reporting to Defendant Meade and Defendant Meade appeared to give the officers orders.

67. Then, after performing a search of the home, Defendants Geddings, Crowe, and Johnson and Defendant Meade left Guerrero's home.

68. On November 18, 2021, Guerrero saw Defendant Meade outside her home again.

69. Guerrero and S returned home on November 18, 2021 from being out and Guerrero parked her vehicle inside the garage.

70. Guerrero got out of the vehicle to move a garbage bin out of the way of her vehicle.

71. When Guerrero turned around in the garage with the garbage bin, Defendant Meade was in her driveway walking towards her.

72. Frightened, Guerrero immediately closed the garage door to keep herself and S safe.

73. Defendant Meade then parked his white, BMW SUV at the end of Guerrero's driveway behind Guerrero's vehicle parked in the garage, intentionally blocking Guerrero in so that she could not leave her home in her vehicle.

74. Defendant Meade stayed there in the white, BMW SUV blocking Guerrero in for at least 30 minutes, but probably more.

75. On information and belief that it was Defendant Meade, Defendant Meade also sent Loring Justice a threatening text message stating he was not going anywhere, meaning he was going to continue to block Guerrero and S in and prevent them from leaving their home in their vehicle.

76. On information and belief that it was Defendant Meade, Defendant Meade also sent additional, threatening text messages to Loring Justice without identifying himself.

77. A little while later on November 18, 2021, Defendant Meade returned to the front door of Guerrero and Justice's home with another Knoxville Police Department Officer.

8

78. Guerrero's neighbors also informed Guerrero Defendant Meade had bothered them about Guerrero and Justice as well.

79. Defendant Meade returned to 500 Prescott Way, Knoxville, TN 37919 on November 18, 2021 to threaten and/or intimidate Guerrero and S.

80. Guerrero called the Knoxville Police Department on Friday, November 19, 2021 to gain information regarding the incidents on November 17 and 18, 2021 at her home.

81. Officer Klingman confirmed that neither Guerrero nor Justice had any outstanding warrants.

82. Officer Klingman also informed Guerrero that on November 17, 2021, someone called dispatch and informed he/she wished to turn himself/herself in and gave the address of Guerrero's home – 500 Prescott Way, Knoxville, TN 37919.

83. Guerrero has lived at 500 Prescott Way since 2014 and Justice has lived there since approximately 2001 with no interruption.

84. Officer Klingman speculated the person who called wanting to turn himself/herself into the police may have lived there previously, but such cannot be the case because Justice was the first resident of the development on Deane Hill and has never sold or leased the unit.

85. Officer Klingman confirmed the caller did not identify himself/herself as either Guerrero or Justice but could not/would not give Guerrero the name, if any, that was used by the caller to dispatch.

86. Guerrero's conversation with Officer Klingman and the information he provided contradict Defendants' Geddings, Johnson, and Crowe at Guerrero's home on November 17, 2021 that they had a warrant.

87. Guerrero also spoke with an officer who identified himself as "550," Sergeant Wilson, and Defendant Jonathan Chadwell on November 19, 2021.

88. Defendant Chadwell informed Guerrero on November 19, 2021 there was no report of any Knoxville Police Department officers being in Guerrero's home on November 17, 2021.

89. Defendant Chadwell called Guerrero on Monday, November 22, 2021.

90. Defendant Chadwell identified the man in plain clothes (Defendant Meade) as a "process server," but would not identify him by name.

9

91. Guerrero later found out Defendant Meade was employed as an agent to serve process by Defendants Jeffrey Price and Manier & Herod P.C.

92. Defendant Chadwell then told Guerrero there was some kind of warrant with Justice's name on it from "Roane County."

93. Defendant Chadwell told Guerrero the so-called warrant from Roane County allowed entry into Guerrero's home without having or showing a warrant that allows entry into the home.

94. Defendant Chadwell asked Guerrero if she still wanted to make a complaint against the Knoxville Police Department, and Guerrero informed she did.

95. Defendant Chadwell became defensive, and, in a threatening manner, Defendant Chadwell accused Guerrero of lying to a police officer at my home on November 17, 2021.

96. Defendant Chadwell then accused Guerrero of informing the police officers that forced themselves into Guerrero's home on November 17, 2021 that Justice did not live there.

97. Guerrero informed Defendants Geddings, Crowe, and Johnson on November 17, 2021 that no one by the name of "Loring Justice" was at her home at that time, which was the truth and Defendants Geddings, Crowe, and Johnson know this because they searched Guerrero's home without a warrant that night.

98. After the incidents on November 17 and 18, 2021 at her home, Guerrero began almost obsessively checking her Ring doorbell to make sure no one was outside her home.

99. After the incidents on November 17 and 18, 2021, a FedEx package was delivered to Guerrero's home and the delivery driver rang the doorbell.

100. Hearing the doorbell, S, who was two years old at the time, responded, "Uh oh."

101. Guerrero wrote letters to Mayor Indya Kincannon on November 24, 2021 and December 2, 2021 regarding these incidents. Following those letters, Defendant Knoxville Police Department commenced a so-called investigation.

102. The investigation was not genuine.

103. Guerrero met with Sergeant Bunch and Sergeant Britt of the Knoxville Police Department on December 10, 2021 related to the so-called investigation.

10

104. During the meeting, Sergeants Bunch and Britt tried to convince Guerrero it was acceptable for Defendants Geddings, Crowe, and Johnson to enter her home without her consent because of a civil contempt order related to Justice and cited Tennessee Rule of Criminal Procedure 4.

105. Defendant Knoxville Police Department confirmed no warrant to search the home located at 500 Prescott Way, Knoxville, Tennessee 37919 existed.

106. During the meeting, Sergeants Bunch and Britt attempted to patronize Guerrero, a lawyer, as they perceived her lack of knowledge related to criminal law because she does not regularly practice criminal law.

107. The civil contempt order Sergeants Bunch and Britt referenced and showed Guerrero at their December 10, 2021 meeting does not meet the requirements of Tenn. R. Crim. P. 4.

108. Even had the civil contempt order referenced by Bunch and Britt met the requirements of Tenn. R. Crim. P. 4 as an "arrest warrant," an arrest warrant does not allow the permission-less entry and search of a home.

109. Rule 41 of the Tennessee Rules of Criminal Procedure governs search warrants.

110. Rule 41 of the Tennessee Rules of Criminal Procedure requires police officers who enter and search a home to have two copies of the warrant to search the home and one of them must be shown and given to the residents of the home at the time of the search.

111. Sergeants Bunch and Britt tried to purposefully confuse Guerrero regarding the requirements of police officers entering her home to deter her from further complaining and/or insisting an investigation take place.

112. Sergeants Bunch and Britt asked Guerrero, at least once, whether she still wished to pursue her complaint and an investigation after attempting to confuse her and attempting to convince her the officers were justified in entering and searching her home on November 17, 2021 without a warrant or permission.

113. Neither Sergeants Bunch or Britt, or any other officer or other personnel of or relating to the so-called investigation has ever contacted Guerrero again regarding the incidents at her home on November 17 and 18, 2021.

11

114. The agents of the Defendants did not have adequate training regarding the difference between search warrants and arrest warrants, and unreasonable searches and seizures under the Fourth Amendment of the U.S. Constitution.

115. Defendants were aware or should have known that entering and searching a home require special procedures, policies, and customs to ensure due process and retention of the residents' constitutional rights against unreasonable searches and seizures.

116. Failing to promulgate and implement such procedures, policies, or customs caused the perpetuation of procedures, policies, or customs leading directly to deliberate indifference to Guerrero and S's constitutional rights.

117. Defendants City of Knoxville, Tennessee and Knoxville Police Department failed to adequately supervise its agents.

118. Since Defendants' illegal search of her home, Guerrero's ability to perform and enjoy her usual activities, including family and work-related activities, has been impaired.

119. Guerrero has suffered severe emotional distress and mental anguish affecting her psychological well-being.

120. Guerrero and S are entitled to compensation for the Constitutional harms Defendants inflicted on them.

121. Guerrero and S are entitled to compensation under the Tennessee Governmental Tort Liability Act (Tenn. Code Ann.§ 29-20-101 *et seq.*) for harms Defendants inflicted on them.

### VII. NEGLIGENT TRAINING AND SUPERVISION BY CITY OF KNOXVILLE, TENNESSEE, KNOXVILLE POLICE DEPARTMENT AND FORMER POLICE CHIEF EVE THOMAS AND POLICE CHIEF PAUL NOEL

122. Plaintiff adopts paragraphs 1 through 121 as if set forth verbatim.

123. Defendant Thomas had a duty to train, manage, and supervise those persons who worked for her.

124. Defendant Noel has a duty to train, manage, and supervise those persons working for him.

125. Defendant Thomas intentionally or negligently failed to train and supervise on the proper circumstances under which her police officers may enter and search a home.

12

126. Defendant Noel intentionally or negligently failed to train and supervise on the proper circumstances under which his police officers may enter and search a home.

127. Defendant Thomas intentionally or negligently failed to properly and completely investigate allegations of the improper and forced entry and search of residences, and attempted to cover up injuries to citizens because of the use of warrantless searches by her subordinates.

128. Defendant Noel intentionally or negligently failed to properly and completely investigate allegations of the improper and forced entry and search of residences, and attempted to cover up injuries to citizens because of the use of warrantless searches by his subordinates.

129. Defendant Thomas knew from past litigation, complaints and incidents officers in her department intentionally or negligently and routinely engaged in warrantless searches, including, but not limited to, forced entry into citizens' homes and warrantless searches of residences.

130. Defendant Noel knew from past litigation, complaints and incidents deputies in his department intentionally or negligently and routinely engaged in warrantless searches, including, but not limited to, forced entry into citizens' homes and warrantless searches of residences.

131. Not only did Thomas not discourage such gratuitous searches and/or violations of well-established constitutional rights, she participated in it, signaling her subordinates such conduct was acceptable.

132. Not only did Noel not discourage such gratuitous searches and/or violations of well-established constitutional rights, he participated in it, signaling his subordinates such conduct was acceptable.

133. Thomas intentionally or negligently failed to obtain legitimate and independent investigations into claims by the public of improper and unreasonable searches and seizures, including, but not limited to, Guerrero's complaint.

134. Noel intentionally or negligently failed to obtain legitimate and independent investigations into claims by the public of improper and unreasonable searches and seizures, including, but not limited to, Guerrero's complaint.

135. By her failure to conduct impartial investigations and to discipline those officers under her command who engaged in unreasonable searches and seizures, Thomas acquiesced in the conduct

13

of those persons working for the Knoxville Police Department and permitted a *de facto* policy which allowed the abusive or negligent use of unreasonable, warrantless searches of homes by those employed by the Knoxville Police Department.

136. By his failure to conduct impartial investigations and to discipline those officers under his command who engaged in unreasonable searches and seizures, Noel acquiesced in the conduct of those persons working for the Knoxville Police Department and permitted a *de facto* policy which allowed the abusive or negligent use of unreasonable, warrantless searches of homes by those employed by the Knoxville Police Department.

137. This culture of lawlessness in the Knoxville Police Department has existed for years, long enough for Defendants Thomas, Noel, Knoxville Police Department, and the City of Knoxville, Tennessee to know of it.

138. By their knowledge and failure to take measures to alter this culture of lawlessness, Thomas, Noel, the Knoxville Police Department, and the City of Knoxville, Tennessee have intentionally and negligently failed their duties and responsibilities to the citizens of Knoxville and victims like Guerrero and S.

139. The City of Knoxville and the Knoxville Police Department intentionally and/or negligently failed to screen, hire, train, monitor, supervise, control, assign, counsel, investigate, and discipline.

140. Defendant Thomas enacted policies and procedures approved by the Knoxville Police Department and the City of Knoxville, Tennessee which violated Guerrero and S's clearly established rights or maintained a practice of turning a blind eye to evidence and/or allegations raising questions about warrantless entry and searches of homes in the Knoxville Police Department and that practice has resulted in systematic deprivation of the rights of citizens like Guerrero and S, known by the City of Knoxville, Tennessee.

141. Among these policies and procedures was the practice of "coaching" officers in both the field and in internal investigations, and other employees and agents, by the Knoxville Police Department and the City of Knoxville, Tennessee personnel in a supervisory position in tactics to deter citizens from making formal complaints against Defendants by using manipulation, confusion, and intimidation so that Defendants' conduct would not come to light.

14

142. This was to avoid or reduce the occurrences where the City would be found liable for the unlawful acts and/or omissions of officers.

143. Guerrero and S were subjected to unnecessary, abusive and negligent search in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution and deprived of their civil rights because of the failure of Thomas, Noel, the Knoxville Police Department, and the City of Knoxville, Tennessee to train, monitor, supervise, control, assign, counsel, investigate, and discipline.

144. Guerrero and S suffered injury after the warrantless search of their home by Defendants, suffered fear of the Defendants returning to their home to force entry again, and Guerrero suffered injury from Defendant Chadwell's threatening behavior and statements after she confirmed she wished to file a complaint against the Department.

145. Proximately because of Thomas, Noel, the Knoxville Police Department, and the City of Knoxville, Tennessee's failures and/or negligence, Guerrero and S were injured.

## VIII. WAIVER OF IMMUNITY

146. As set out in the Tennessee Governmental Tort Liability Act, the City of Knoxville, Tennessee waived immunity for the negligence of its officers and/or employees of the Knoxville Police Department and for the non-negligent actions of officers of the Knoxville Police Department. Tenn. Code Ann. §§ 29-20-202; 29-20-205; 8-8- 302; 8-8-303.

147. The officers employed by the Knoxville Police Department are each a "Government Employee" as defined by Tenn. Code Ann. § 29-20-107.

148. There is no immunity for criminal conduct or conduct which is willful or malicious or for gross negligence or deliberate indifference.

149. There is no immunity for willful violation of Guerrero and S's constitutionally protected civil rights or indifference to Guerrero and S's civil rights.

150. Any governmental or other immunity of the City of Knoxville, Tennessee, Thomas, and/or Noel is removed because of willful, wanton and/or gross negligence or deliberate indifference while their agents were acting within the scope of their employment with the Knoxville Police Department when they proximately injured Guerrero and S.

15

151. There is no immunity for the conspiracy to cover up the events that led to Guerrero and S's injury and violation of their constitutional and civil rights to be secure in their home, which was willful, malicious, grossly negligent and criminal.

152. There is no immunity for violating the clearly-established constitutional rights of Guerrero and S.

153. That Defendants were violating clearly-established constitutional rights of Guerrero and S is something that would have and should have been appreciated by a reasonable officer or other law enforcement agent in the performance of his or her duties.

## IX. CAUSES OF ACTION

### a. Unreasonable Search (Violation of 42 U.S.C. § 1983)

154. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-153.

155. Defendants' permission-less entry and search of Guerrero's home was both excessive and unreasonable under the circumstances.

156. Defendants' unjustified, permission-less entry and search of Guerrero's home deprived her of her rights under the Fourth and Fourteenth Amendments.

157. Guerrero, as S's mother and next friend, has the right and standing to assert S's claim for this violation of his Fourth and Fourteenth Amendment rights.

158. Defendants' unlawful, forced entry and search of Guerrero's home caused Guerrero and S injury, including mental injury.

159. Because of their conduct, all Defendants are liable for Guerrero and S's injuries, because they were integral participants in the forced entry and search of Guerrero's home and deliberate indifference to Guerrero and S's constitutional rights to be free from unreasonable search and their constitutional rights to privacy in their home, and/or because they discouraged investigation and/or attempted to intimidate Guerrero from making these violations known.

160. The policies or customs established and endorsed by the City of Knoxville, Tennessee and the Knoxville Police Department were a cause of the injuries suffered by Guerrero and S.

16

161. Proximately because of Defendants' acts and/or omissions, Guerrero and S suffered damages, including, without limitation, loss of enjoyment of life, emotional distress, medical expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

162. Defendants' acts and/or omissions were willful, malicious, intentional, oppressive, reckless, criminal and/or were done in willful and conscious disregard of Guerrero and S's rights, welfare and safety, justifying punitive damages.

### b. Warrantless Search

163. Plaintiff adopts paragraphs 1 through 162 as if fully set forth herein.

164. Guerrero and S had the Constitutional right to be free from forced entry and unreasonable, warrantless search of their home by Defendants.

165. Defendants' forced entry and search of the home was far out of proportion to the circumstances as they existed and were known to exist and/or were done to injure and/or cause mental distress and/or fear.

166. Entering a private residence without permission and searching the residence without a warrant violated Guerrero and S's rights secured to them by the Fourth and Fourteenth Amendments.

167. Guerrero and S had a constitutional right to be free from Defendants' permission-less, warrantless entry and search of their home and this constitutional right was clearly established on November 17, 2021.

168. These rights were clearly established when Defendants entered the home without permission and without a warrant and searched the home and the acts and/or omissions of Defendants violated those rights.

169. Any reasonable person would have known the actions and/or omissions violated Guerrero and S's rights.

170. Proximately because of Constitutional violations, Guerrero and S suffered injury.

171. Defendants' conduct was criminal, malicious, intentional, and/or reckless warranting punitive damages against Defendants for callous indifference to Guerrero and S's rights.

### c. Deprivation of Due Process (42 U.S.C. § 1983)

172. Plaintiff repeats and re-alleges every allegation in paragraphs 1-171 as if set forth herein.

17

173. Defendants' agents acted within the course and scope of their duties as a officers of the Knoxville Police Department when Defendants entered the home without permission and without a warrant and searched the home.

174. Neither Guerrero nor S nor Justice posed an imminent threat of danger to anyone else.

175. Defendants' acts and/or omissions violated Guerrero and S's Fourth, Fifth, and Fourteenth Amendment rights.

176. All Defendants are liable for Guerrero and S's injuries, because they were integral participants in the forced entry and search of Guerrero's home and deliberate indifference to Guerrero and S's constitutional rights to be free from unreasonable search and their constitutional rights to privacy in their home, and/or because they discouraged investigation and/or attempted to intimidate Guerrero from making these violations known.

177. The policies or customs established and endorsed by Defendants City of Knoxville, Tennessee and Knoxville Police Department were a proximate cause of the injuries suffered by Guerrero and S.

178. Proximately because of Defendants' acts and/or omissions, Plaintiff suffered damages, including, without limitation, loss of enjoyment of life, emotional distress, medical expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

179. The acts and/or omissions of the Defendants were willful, malicious, intentional, oppressive, reckless, criminal and/or were done in willful and conscious disregard of Guerrero and S's rights, welfare and safety, justifying punitive damages.

### d. Violation of Civil Rights Under Title 42 U.S.C. § 1983 (Deliberate Indifference)

179. Plaintiff repeats and re-alleges every allegation in paragraphs 1-178 as if set forth verbatim.

180. In committing the acts/omissions complained of herein, Defendants acted under color of state law to deprive Guerrero and S of constitutionally protected rights under *inter alia*, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution including, the right to be free unreasonable search and seizure and the right to be free from deliberate indifference to constitutional rights, by persons acting under color of state law.

18

181. In violating Guerrero and S's rights, Defendants acted under color of state law and conducted a permission-less, warrantless search of their home and were deliberately indifferent to their constitutionally protected rights, in violation of Guerrero and S's rights under the United States Constitution.

182. Proximately because of Defendants' violations, Guerrero and S suffered general and special damages and are entitled to relief under 42 U.S.C. § 1983.

183. The conduct of Defendants was criminal, willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed.

### e. Violation of Civil Rights Under 42 U.S.C. § 1983 (Failure to Implement Appropriate Policies, Customs, and Practices)

184. Plaintiff repeats and re-alleges every allegation in paragraphs 1-183 as if set forth verbatim.

185. Defendants City of Knoxville, Tennessee and Knoxville Police Department implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices, including allowing employees of the Knoxville Police Department to conduct warrantless searches of homes without lawful justification and implicitly or explicitly allowing or promoting deliberate indifference to the constitutional rights of the citizens of Knoxville, Tennessee.

186. Defendants City of Knoxville, Tennessee and Knoxville Police Department implicitly or explicitly adopted and implemented a careless and reckless policy, custom, or practice of allowing employees to conduct warrantless searches of homes without lawful justification and implicitly or explicitly allowed and/or promoted deliberate indifference to the constitutional rights of the citizens of Knoxville, Tennessee.

187. The failure of City of Knoxville, Tennessee and Knoxville Police Department to adequately train and supervise its employees and agents amounts to deliberate indifference to the rights of Guerrero and S to be free from permission-less entry and unreasonable search inside their home the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

188. Because of this permission-less entry and unreasonable, warrantless search inside their home and deliberate indifference to Guerrero and S's rights, Guerrero and S suffered injuries and both are entitled to relief under 42 U.S.C. § 1983.

19

189. Defendants acted under color of state law to deprive Guerrero and S of certain constitutionally-protected rights including, but not limited to:

a. the right to be free from deliberate indifference to constitutional rights;
b. the right not to be deprived of liberty or property or the use thereof without due process of law; and
c. the right to be free from unreasonable search by persons acting under color of state law.

## STATE LAW CLAIMS

### f. Trespass I (Police Defendants)

190. Plaintiff repeats and re-alleges every allegation in paragraphs 1-189 as if set forth verbatim.

191. Defendants Geddings, Crowe, and Johnson intentionally entered Guerrero's home without permission on November 17, 2021.

192. Indeed, one of the officers pushed Guerrero aside while she was holding S to gain entry into the home.

193. Defendants Geddings, Crowe, and Johnson entered Guerrero's home without consent.

194. Further, Defendants Geddings, Crowe, and Johnson's trespass facilitated and allowed the trespass of Defendant Meade inside Guerrero's home.

### g. Trespass II (Defendant Meade)

195. Plaintiff repeats and re-alleges every allegation in paragraphs 1-194 as if set forth verbatim.

196. Defendant Meade intentionally entered Guerrero's home without permission on November 17, 2021.

197. Defendant Meade used the authority of Defendants Geddings, Crowe, and Johnson to enter Guerrero's home without permission.

198. Defendant Meade entered Guerrero's home without consent.

199. Defendant Meade refused to leave Guerrero's home when she told him to leave.

200. At all times material hereto, Defendant Meade was employed as an agent of Defendants Price and Manier & Herod P.C. and was acting within the scope of his employment.

### h. Trespass III (Defendant Meade)

201. Plaintiff repeats and re-alleges every allegation in paragraphs 1-200 as if set forth verbatim.

20

202. Defendant Meade intentionally entered Guerrero's driveway without permission on November 18, 2021 while Guerrero had her back turned.

203. Defendant Meade entered Guerrero's driveway without consent.

204. At all times material hereto, Defendant Meade was employed as an agent of Defendants Price and Manier & Herod P.C. and was acting within the scope of his employment.

### i. Assault I (Police Defendants)

205. Plaintiff repeats and re-alleges every allegation in paragraphs 1-204 as if set forth verbatim.

206. Defendants Geddings, Crowe, and Johnson came to Guerrero's residence on November 17, 2021.

207. Defendants Geddings, Crowe, and Johnson repeatedly beat on the front door of Guerrero's residence on November 17, 2021.

208. Defendants Geddings, Crowe, and Johnson repeatedly and loudly and in a threatening manner yelled at Guerrero and S through the front door on November 17, 2021.

209. Defendants Geddings, Crowe, and Johnson were armed at Guerrero's home on November 17, 2021.

210. Defendants Geddings, Crowe, and Johnson intended to frighten Guerrero and S.

211. Defendants Geddings, Crowe, and Johnson's actions by repeatedly beating on the front door and repeatedly and loudly yelling in a threatening manner through the front door of Guerrero's home at Guerrero and S caused Guerrero and S fear of physical harm.

### j. Assault II (Defendant Meade)

212. Plaintiff repeats and re-alleges every allegation in paragraphs 1-211 as if set forth verbatim.

213. Defendant Meade came to Guerrero's residence on November 17, 2021.

214. Defendant Meade participated with Defendants Geddings, Crowe, and Johnson in repeatedly beat on the front door of Guerrero's residence on November 17, 2021.

215. Defendant Meade participated with Defendants Geddings, Crowe, and Johnson in repeatedly and loudly and in a threatening manner yelled at Guerrero and S through the front door on November 17, 2021.

21

216. Defendants Geddings, Crowe, and Johnson were armed at Guerrero's home on November 17, 2021.

217. Guerrero reasonably believed Defendant Meade was an armed police officer as Defendant Meade was wearing a badge around his neck and entered her home with Defendants Geddings, Crowe, and Johnson without advising he was not a police officer until much later.

218. Defendant Meade intended to frighten Guerrero and S.

219. Defendant Meade's participation with Defendants Geddings, Crowe, and Johnson's actions by repeatedly beating on the front door and repeatedly and loudly yelling in a threatening manner through the front door of Guerrero's home at Guerrero and S caused Guerrero and S fear of physical harm.

220. At all times material hereto, Defendant Meade was employed as an agent of Defendants Price and Manier & Herod P.C. and was acting within the scope of his employment.

### k. Assault III (Defendant Meade)

221. Plaintiff repeats and re-alleges every allegation in paragraphs 1-220 as if set forth verbatim.

222. Defendant Meade came to Guerrero's residence on November 18, 2021 and entered her driveway.

223. Defendant Meade intentionally entered Guerrero's driveway upon her and S's return home from being out that day.

224. Defendant Meade entered Guerrero's driveway while Guerrero was in her garage with her back turned.

225. Defendants Meade was in the driveway walking towards her when she turned to face the driveway with a garbage bin she was moving out of the way of her vehicle.

226. Defendant Meade never announced himself to Guerrero.

227. Guerrero reasonably believed Defendant Meade was armed.

228. Defendant Meade intended to frighten Guerrero and S.

229. Defendant Meade returned to Guerrero's home on November 18, 2021 to threaten and/or intimidate her.

22

230. Defendant Meade's actions by walking toward Guerrero in her driveway while her back was turned caused Guerrero and S fear of physical harm.

231. At all times material hereto, Defendant Meade was employed as an agent of Defendants Price and Manier & Herod P.C. and was acting within the scope of his employment.

### l. Battery

232. Plaintiff repeats and re-alleges every allegation in paragraphs 1-231 as if set forth verbatim.

233. Defendant Crowe or Johnson or Geddings pushed Guerrero out of the way of the doorway of her home after she refused to give them permission to enter her home.

234. Guerrero was holding S at the time Defendant Crowe or Johnson or Geddings pushed Guerrero out of the way of the doorway of her home.

235. Guerrero did not give permission to any of the officers that illegally searched her home on November 17, 2021 to touch her or contact her body in any way.

236. Defendant Crowe or Johnson or Geddings intentionally came in contact with Guerrero's body to force her out of her doorway to enter her home.

237. Such bodily contact is offensive, particularly given the officers had no warrant and no business entering Guerrero's home or searching Guerrero's home.

238. Such bodily contact infringed on Guerrero's reasonable sense of personal dignity that is ordinarily respected in civilized society.

### m. False Imprisonment

239. Plaintiff repeats and re-alleges every allegation in paragraphs 1-238 as if set forth verbatim.

240. After Defendant Meade assaulted Guerrero in her driveway on November 18, 2021 and after Guerrero, frightened for her own safety and S's safety, immediately closed her garage door before Defendant Meade could get in, Defendant Meade intentionally parked a white, BMW SUV behind Guerrero's vehicle.

241. Defendant Meade parked the white, BMW SUV behind Guerrero's vehicle such that it would not allow Guerrero to leave her home in her vehicle.

242. Defendant Meade blocked Guerrero from leaving her home in her vehicle against her will.

23

243. Defendant Meade stayed there in the white, BMW SUV blocking Guerrero in for at least 30 minutes, but probably more.

244. On information and belief that it was Defendant Meade, Defendant Meade also sent Loring Justice a threatening text message while he was blocking Guerrero and S from leaving their home stating he was not going anywhere, meaning he was going to continue to block Guerrero and S in and prevent them from leaving their home in their vehicle.

245. Defendant Meade had no authority under law or otherwise to detain and/or restrain Guerrero from leaving her home on November 18, 2021 or at any other time.

246. At all times material hereto, Defendant Meade was employed as an agent of Defendants Price and Manier & Herod P.C. and was acting within the scope of his employment.

### n. Invasion of Privacy I (Police Defendants)

247. Plaintiff repeats and re-alleges every allegation in paragraphs 1-247 as if set forth verbatim.

248. Defendants Geddings, Crowe, and Johnson intentionally and physically intruded into Guerrero's home on November 17, 2021.

249. Defendants Geddings, Crowe, and Johnson intruded upon Guerrero and S's solitude and/or seclusion in their own home.

250. Defendants Geddings, Crowe, and Johnson forced entry into Guerrero and S's home and searched it without a warrant and without permission.

251. Forcing entry into a private home and searching it without a warrant and without permission is highly offensive to a reasonable person.

252. Defendants Geddings, Crowe, and Johnson facilitated Defendant Meade's invasion of Guerrero and S's privacy as well by allowing him to pretend to be a law enforcement officer and allowing him to accompany them inside Guerrero and S's home.

253. Guerrero expected to have the utmost privacy in her own home.

### o. Invasion of Privacy II (Defendant Meade)

254. Plaintiff repeats and re-alleges every allegation in paragraphs 1-253 as if set forth verbatim.

255. Defendant Meade intentionally and physically intruded into Guerrero's home on November 17, 2021.

24

256. Defendant Meade intruded upon Guerrero and S's solitude and/or seclusion in their own home.

257. Defendant Meade forced entry into Guerrero and S's home by pretending to be a law enforcement officer, or pretending to be affiliated with law enforcement, at least, by wearing a fake badge.

258. Defendant Meade never disclaimed affiliation with Defendants Geddings, Crowe, and Johnson before he entered Guerrero's home on November 17, 2021.

259. Forcing entry into a private home and then proceeding to ask the home's owner specific and personal questions without permission is highly offensive to a reasonable person.

260. Forcing entry into a private home by pretending to be a law enforcement officer without permission is highly offensive to a reasonable person.

261. Forcing entry into a private home by wearing a fake badge and failing to disclaim affiliation with law enforcement is highly offensive to a reasonable person.

262. Defendants Geddings, Crowe, and Johnson facilitated Defendant Meade's invasion of Guerrero and S's privacy as well by allowing him to pretend to be a law enforcement officer and allowing him to accompany them inside Guerrero and S's home.

263. Guerrero expected to have the utmost privacy in her own home.

264. At all times material hereto, Defendant Meade was employed as an agent of Defendants Price and Manier & Herod P.C. and was acting within the scope of his employment.

### p. Impersonating Police Officer (Tenn. Code Ann. 36-16-301)

265. Plaintiff repeats and re-alleges every allegation in paragraphs 1-264 as if set forth verbatim.

266. Defendant Meade intended to defraud Guerrero on November 17, 2021.

267. Defendant Meade arrived at Guerrero and S's home with Defendants Geddings, Crowe, and Johnson.

268. Defendants Geddings, Crowe, and Johnson arrived in uniform and in squad cars of the Knoxville Police Department.

269. Defendant Meade was in plain clothes but was wearing a badge around his neck that appeared to be a law enforcement badge.

25

270. Guerrero reasonably believed Defendant Meade was armed.

271. Defendant Meade pretended to be a police officer to Guerrero to gain entry into her home as Defendants Geddings, Crowe, and Johnson entered Guerrero and S's home and searched it without a warrant and without permission.

272. Defendant Meade pretended to be a law enforcement officer for the purpose of engaging in an activity that is ordinarily and customarily an activity established by law as a law enforcement activity.

273. That is, Defendant Meade pretended to be a law enforcement officer to enter Guerrero and S's home and to question and/or interrogate Guerrero inside her own home.

274. Guerrero believed Defendant Meade was a police officer until late in the interaction where he disclaimed affiliation with law enforcement while still inside Guerrero and S's home.

275. Even after Defendant Meade disclaimed affiliation with law enforcement and Guerrero told Defendant Meade to get out of her house, Defendant Meade refused to do so and remained inside Guerrero's home and continued to engage Guerrero.

276. At all times material hereto, Defendant Meade was employed as an agent of Defendants Price and Manier & Herod P.C. and was acting within the scope of his employment.

### x. Stalking

277. Plaintiff repeats and re-alleges every allegation in paragraphs 1-276 as if set forth verbatim.

278. Defendant Meade repeatedly harassed Guerrero and S.

279. Defendant Meade's conduct was willful.

280. Defendant Meade caused Guerrero and S to feel terrorized, frightened, intimidated, threatened, and harassed.

281. Defendant Meade's actions are especially aggravated given his behavior, including assault, false imprisonment, invasion of privacy, and stalking involved S, a minor.

282. As a direct and proximate result of Defendant Meade's actions, Guerrero has suffered serious emotional distress.

283. At all times material hereto, Defendant Meade was employed as an agent of Defendants Price and Manier & Herod P.C. and was acting within the scope of his employment.

26

## y. Harassment

284. Plaintiff repeats and re-alleges every allegation in paragraphs 1-283 as if set forth verbatim.

285. Upon information and belief that it was Meade, Defendant Meade intentionally threatened Justice via text message regarding Guerrero and S, Justice's family.

286. On November 18, 2021, Defendant Meade intentionally blocked Guerrero and S from leaving their home by parking a white, BMW SUV behind Guerrero's vehicle for, at least, 30 minutes, falsely imprisoning Guerrero and S.

287. While blocking Guerrero and S from leaving their home, Defendant Meade sent Justice a text message threatening that he was not going anywhere.

288. That is, Defendant Meade threatened Justice that he would continue to block Guerrero and S from leaving their home.

289. False imprisonment is a violation of law.

290. Defendant Meade knew his blocking of Guerrero and S from leaving their home was a violation of law.

291. Defendant Meade's text message frightened and alarmed Guerrero.

292. At all times material hereto, Defendant Meade was employed as an agent of Defendants Price and Manier & Herod P.C. and was acting within the scope of his employment.

## m. Negligence

293. Plaintiff repeats and re-alleges every allegation in paragraphs 1-292 as if set forth verbatim.

294. Defendants owed a duty of care toward Guerrero and S, and had to use reasonable diligence to ensure that Guerrero and S's were not harmed and/or their constitutional rights were not violated by Defendants' acts and/or omissions. Defendants' actions and/or omissions were intentional, negligent and reckless, including:

a. Entering Guerrero and S's home without a warrant and/or failing to obtain a warrant to enter Guerrero and S's home;

b. Searching Guerrero and S's home without a warrant and/or failing to obtain a warrant to enter and search Guerrero and S's home;

c. Improper handling of the situation with Guerrero and S, including deliberate indifference to Guerrero and S's constitutional rights under the Fourth and Fourteenth Amendments to the Constitution;

27

d. Improper handling of the situation with Guerrero and S, particularly after Guerrero raised complaints and concerns, by using tactics and/or intimidating and threatening statements/actions to deter Guerrero from further pursuing a complaint and/or investigation against the Defendant officers and/or the Knoxville Police Department and/or the City of Knoxville, Tennessee;

e. Failing to properly train, supervise and discipline employees; and

f. The negligent hiring, retention and assignment of its employees.

295. Defendants' conduct caused Guerrero and S injury.

296. Defendants' conduct caused Guerrero and S serious emotional and physical distress and humiliation.

297. Defendants are liable for Guerrero and S's injuries, because they were integral participants in the negligence and/or intentional wrongdoing, or deliberate indifference, in the forced entry and search of Guerrero's home and deliberate indifference to Guerrero and S's constitutional rights to be free from unreasonable search and their constitutional rights to privacy in their home, and/or because they discouraged investigation and/or attempted to intimidate Guerrero from making these violations known.

### n. Intentional Infliction of Emotional Distress

298. Plaintiff repeats and re-alleges every allegation in paragraphs 1-297 as if set forth verbatim.

299. Defendants engaged in extreme and outrageous behavior.

300. Defendants intended such conduct to inflict severe emotional distress on Guerrero and S and knew their conduct would cause Guerrero and S and their family severe emotional distress.

301. Proximately because of Defendants' outrageous conduct, Guerrero and S were injured and suffered damages.

302. Plaintiff demands compensatory damages and because Defendants acted criminally, maliciously, wantonly, and/or oppressively, punitive damages, plus the costs of this action and whatever additional relief this Court deems just.

### o. Tennessee Governmental Tort Liability Act: Under T.C.A. § 29-20-101 *et* seq., Tennessee Common Law

303. Plaintiff repeats and re-alleges every allegation in paragraphs 1-302 as if set forth verbatim.

304. Defendants owed Guerrero and S a duty to use due care at or about the times of the incident.

305. In committing the acts and/or omissions, Defendants negligently breached said duty to use due care, which directly and proximately resulted in injuries and damages.

28

**p. Tennessee Governmental Tort Liability Act: Under T.C.A. § 29·20-101** *et seq., Tennessee* **Common Law (Negligent Supervision)**

306. Plaintiff repeats and re-alleges every allegation in paragraphs 1-305 as if set forth verbatim.

307. Defendants owed Guerrero and S a duty to use due care at or about the time of the incidents.

308. Defendants City of Knoxville, Tennessee and Knoxville Police Department negligently supervised its employees and agents by failing to provide proper training and outline proper procedure in the entry and search of homes with or without warrants.

309. Defendants breached said duty to use due care, which proximately resulted in injuries and damages.

310. Proximately because of the acts and/or omissions of Defendants, Guerrero and S suffered injuries, including mental injuries.

**q. Tennessee Governmental Tort Liability Act: Under T.C.A. § 29-20-101** *et* **seq., Tennessee Common Law (Conspiracy)**

311. Plaintiff repeats and re-alleges every allegation in paragraphs 1-310 as if set forth verbatim.

312. Defendants participated in a common design through a concert of action to protect a fellow officer or fellow officers by making overtly false statements to Guerrero and/or other authorities on the circumstances surrounding the occurrences set forth herein.

313. Defendants proximately injured, damaged, and caused emotional distress to Guerrero by such fraud and conspiracy.

314. Falsifying facts to establish justification for permission-less and warrantless entry and search of a home or to cover up deliberate indifference to Guerrero and S's constitutional rights to be free from unreasonable search and seizure under the Fourth and Fourteenth Amendments is unconstitutional, unlawful, and criminal.

315. Even the most inexperienced and untrained law enforcement officer would know such corruption violates the Constitutional rights of Guerrero and S.

316. Defendants falsified facts and changed "facts" to create a false "record" surrounding the occurrences related to the permission-less and warrantless entry and search of Guerrero and S's home.

317. This conduct is so outrageous and reprehensible to support punitive damages.

29

318. This scandal and other similar scandals surrounding Defendants strikes at the heart of the legal system.

### r. Ratification by Police Chief Thomas and/or Police Chief Noel and City of Knoxville, Tennessee of Unconstitutional Conduct of Subordinates

319. Plaintiff adopts paragraphs 1 through 318 as if fully set forth verbatim.

320. Defendants Thomas and/or Noel had a duty to train, manage, and supervise those persons working for her/him to prevent constitutional violations of its citizens and the members of society to which members of law enforcement encounter.

321. Defendants Thomas and/or Noel refused to screen, hire, train, monitor, supervise, control, assign, counsel, investigate, and discipline those persons working for her/him which resulted in adoption and ratification of unconstitutional practices from which Guerrero and S suffered injury.

322. Defendants Thomas and/or Noel failed to train and supervise Defendants on the proper circumstances under which entry and search of a home without a warrant to do so could be done.

323. Defendants Thomas and/or Noel failed to train and supervise Defendants on the proper actions, behavior, tone, and attitude to use related to a citizen who wishes to file a complaint or requests an investigation into their subordinates' conduct, particularly not to attempt to deter a citizen from filing a complaint by implicit threats or intimidation or by attempts to confuse.

324. Defendants Thomas and/or Noel failed to properly and completely investigate allegations of unreasonable searches within her/his Department, and attempted to cover up injuries to citizens because of unreasonable searches by his subordinates.

325. Defendants Thomas and/or Noel failed to obtain legitimate and independent investigations into claims by the public of unreasonable searches by his subordinates.

326. By failure to conduct impartial investigations and to discipline and train/re-train those under her/his command who engaged in such conduct, Defendants Thomas and/or Noel acquiesced in the unconstitutional conduct of those persons and permitted a *de facto* policy allowing unreasonable, warrantless searches by those employed by the Knoxville Police Department.

30

327. This deliberate indifference to the constitutional rights of citizens like Guerrero and S within the Knoxville Police Department has existed for years, long enough for Defendants Thomas and/or Noel and the City of Knoxville, Tennessee to know of it.

328. By their knowledge and failure to take measures to alter the culture of lawlessness and deliberate indifference to the constitutional rights of citizens like Guerrero and S, Thomas and/or Noel and the City of Knoxville, Tennessee have approved and ratified the conduct of subordinates engaged in unreasonable, warrantless searches or displaying deliberate indifference to constitutional rights to privacy and freedom from unreasonable searches, and this *de facto* policy resulted in constitutional violations to Guerrero and S.

329. Thomas and/or Noel enacted policies and procedures approved/ratified by the City of Knoxville, Tennessee that violated Guerrero and S's constitutional rights or, in the alternative, maintained a practice of turning a blind eye to evidence and/or allegations raising questions about unreasonable and/or warrantless searches and deliberate indifference to the rights of citizens like Guerrero and S and that practice has resulted in systematic deprivation of the constitutional rights of citizens such as Guerrero and S which was known to, and ratified by, the City of Knoxville, Tennessee.

330. Among these policies and procedures was the practice of "coaching" officers in both the field and in internal investigations, and other employees and agents, by the Knoxville Police Department and the City of Knoxville, Tennessee personnel in a supervisory position in tactics to deter citizens from making formal complaints against Defendants by using manipulation, confusion, and intimidation so that Defendants' conduct would not come to light.

331. This was done to avoid or reduce occurrences where the City would be found responsible for unlawful/unconstitutional actions and/or omissions of officers or other agents.

332. Guerrero and S suffered injury, including mental injury, because of the failure of Thomas and/or Noel and the City of Knoxville, Tennessee to control the natures and/or illnesses of officers or other agents who could not control their emotions and/or actions and/or omissions when dealing with private citizens of Knoxville.

31

333. Proximately because of Thomas and/or Noel and the City of Knoxville, Tennessee's actions and/or inactions, Guerrero and S's constitutional rights were violated and injuries sustained.

### s. Violation of Guerrero and S's Substantive Due Process Rights

334. Plaintiff adopts paragraphs 1 through 333 as if fully set forth herein.

335. Both Guerrero and S had a right not to be subjected to warrantless search of their home without permission.

336. Guerrero's right to her property and/or use thereof was a clearly established right, and one which a reasonable law enforcement officer would have known.

337. Guerrero and S's right to their liberty was a clearly established right, and one which a reasonable law enforcement officer would have known.

338. Defendants had no right to force entry into Guerrero and S's home without permission and without a warrant and search their home, nor did they have a right to be deliberately indifferent to Guerrero and S's constitutional rights to privacy and against unreasonable search.

339. Such conduct was unconstitutional and violated Guerrero and S's clearly established rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution.

340. A reasonable officer would have known these actions and/or omissions violated Guerrero and S's constitutional rights.

341. Defendants' acts and/or omissions were unnecessary and deliberately indifferent to Guerrero and S's rights.

342. The intentional nature of the conduct violated the rights of Guerrero and S to their property and liberty, and are so shocking to the conscience as to require punitive damages.

### t. Negligent Infliction of Emotional Distress

343. Plaintiff adopts paragraphs 1 through 342 as if fully set forth herein.

344. Defendants had a duty not to violate Guerrero's constitutional rights or engage in, *inter alia*, negligence and/or intentional torts like assault, battery, invasion of privacy, and harassment against Guerrero.

32

345. Defendants breached their duty to protect Guerrero's constitutional rights and engaged in, *inter alia*, negligence and/or intentional torts like assault, battery, invasion of privacy, and harassment against Guerrero.

346. But for Defendants' actions and/or omissions, Guerrero's injury would not have occurred.

347. Defendants' actions and/or omissions are the proximate cause of Guerrero's injury.

348. Because of Defendants' actions and/or omissions described herein, Guerrero has suffered serious emotional injury.

## PRAYERS FOR RELIEF

**WHEREFORE** Plaintiff demands judgment against Defendants for Seven Million Dollars and No Cents ($7,000,000.00), in compensatory damages, punitive damages, costs of this action, reasonable attorney's fees, and pre-judgment and post-judgment interest. Plaintiff demands a jury trial.

s/Linn Guerrero
Linn Guerrero # 033320
200 Prosperity Drive
Knoxville, TN  37923
(865) 584-8620
*Pro Se and Attorney for Plaintiff S*

33